Good morning, your honors. Siobhan Briley for Appellant Troy Alexander Temple. I would like to reserve three minutes for rebuttal. May it please the court. This case hinges on the fact that the only proof that Mr. Temple's life was in danger was the discovery document. For a decade, Mr. Temple tried to get protection from threats to his life, and for a decade, he was repeatedly rebuffed, solely because he lacked proof that his life was in danger. Only when he produced the discovery document as proof of the threat did he get the protection he needed. But by then, it was almost too late. He had been living with so much stress and fear that he had already caused himself serious injury by trying to escape from a federal prison. The critical violation here, the reason the statute of limitations did not begin running until Mr. Temple had the discovery document, was the preparation of a writing proving that his life was in danger. Yes. Pardon me, counsel. Was there not an exhibit attached to his first amended complaint in this action where he admits he became aware of the discovery document in 1996 during an altercation with an inmate? Excuse me. Yes, Judge Beyer, there is an appeal form attached to the complaint that purports to admit that he became aware. It purports. It's an exhibit he attached to his complaint. That's correct. That's a judicial admission of a party litigant. Well, Your Honor, I can address that question, although it wasn't addressed in my brief, but I do have an answer for you here. In the appeal form, it actually was an extrajudicial admission because it was not written It was written before he wrote the complaint. In addition, where a party attempts to correct a mistake made in a pleading, the district court is required to give that explanation due weight, and the district court here gave it no weight. The district court acknowledged that he attempted to correct it. The district court said Mr. Temple says he made a mistake, and that's on page 35 of the excerpts of record in the district court's opinion. But it didn't address the fact that it didn't actually do anything about the fact that Mr. Temple was attempting to correct this mistake that he made. And our scheme, Mr. Temple Is the district court required to accept the version of the pleader that it was a mistake rather than simply blurting out the truth? It's not required to accept that, nor is it required to privilege the statement in the appeal form over the detailed allegations in the complaint. I mean, the case law is clear that the district court may privilege statements and exhibits. Well, in fact Sometimes a statement and exhibit which leaks out can have more credibility than the structured and somewhat manufactured words in the complaint. Sometimes, that's true. And, for instance, in Is the district court entitled to, doesn't it have discretion to make that finding? Does it use the discretion for the district court to have said, well, he admitted that he had the document in 1996, he had actual knowledge of the document's existence and its contents, and he hasn't sued until 2004, the statute has run? There are two answers to that, Judge Bea. One is that the district court does have that discretion. But on the facts before the court here, the district court's failure to take into consideration any other explanation for that statement in the appeal form Why do you say it failed to take into consideration another explanation? Because it didn't recite the explanation in its decision? It did not recite the explanation in its decision. Don't we have before us the rule that we presume that judges read the evidence that's before them, including any explanations that the pleader may have? We do. And a distinction between the evidence in the appeal form and the case law that addresses this issue, for instance, in Spruill, a case in this circuit, the attachment to the complaint was actually an arbitration finding. It was a finding of fact in a judicial forum. Here we're talking about a statement in a form written by a pro se plaintiff who was attempting to get protection that he had been trying to get for 10 years. He had not been able to get it. He finally had one piece of evidence that he thought would be useful for getting that protection. And his goal in writing this appeal form was to write the most convincing story that he was capable of writing to convince the Department of Corrections to provide some sort of protection in the situation. How does that change the date when he stated that he was aware of the discovery document? Well, he was writing from he was writing the story having the benefit of reference  And he was not lying when he said he knew it back in 1996. No, no. He – I – it appears clear from the record that he was attempting to write a convincing story by saying, well, here are all of the facts that I know now. He didn't – it's clear from the complaint that he didn't actually learn that Mr. Scoggins testified at the state criminal trial in 2003. And that's in – I can look it up for you, but Mr. Scoggins, you know, I – it – the way that Mr. Temple wrote the complaint, it's not as clear as it would have been had, you know, a practiced lawyer written the complaint. Mr. Temple also wrote the appeal form. It's not necessarily clear that the progression of all of the facts leads up to his realization. He seems like a pretty sophisticated guy. He is pretty sophisticated. Did he go to trial on his escape and not guilty? Yes. Which is quite amazing. It is quite amazing. And he did a very good job, and he does understand. And I think the sophistication comes through when he is able to pinpoint that it was the discovery document that, in fact, marks the violation of his rights, because that document was what he needed all along to get the protection that he wasn't able to get. I'm a little bit at a loss. You say that's where his violation occurred, when he discovered the document. Is that what you're saying? Yes. The violation really, if I read it right, at least that your client alleged, occurred way back when the district attorney wrote the document and turned it over. Except that the violation only occurs when the plaintiff knows or has reason to know of the violation. Fine. Now, the next question is, when did he have knowledge of it? Not when he alleged it. When did he have knowledge? When he got the document. He says in his appeal document, I had knowledge in 1997. Is that correct? His appeal document actually says 1996. Well, whatever it is. Yes. And he attempted to correct that mistake. He asked the district court to take judicial notice of the fact that Mr. Skagans testified in his state criminal trial, and that as an attempt to show that he had incorrectly recited the facts in his appeal form. And it's true. It's a difficult problem. But on the record before the Court, the appeal form does not trump the allegations in the complaint. He clearly alleges in the complaint that he did not learn of the existence of the appeal form, I mean, of the discovery document until 2003. So are you saying that the district court should not have granted a Rule 12b-6? Yes, Your Honor. Should not. Should not go on to a summary judgment. He should have, yes. Mr. Temple asked the Court to he moved to get discovery for summary judgment on these issues, and he was denied. And had he been given the opportunity to go to summary judgment, he may have been able to prove that, in fact, he had made a mistake in the appeal form and that he did not learn of the discovery document until 2003. In addition, he also – there's a – the critical difference is that he actually needed the piece of paper to get the protection that he was looking for. And without that piece of paper, he wasn't able to get protective custody in prison. So that – But his rights were violated when the – his name was given up to Burton, right? His rights were violated by – And he learned that his rights had been violated because he learned of the existence of the discovery document. Answer me this question. What is his version of how the mistake came about that he said that he knew about it in 1996? His version is that he was attempting to convince the Department of Corrections that he had – that he had the discovery document. And he was trying to write the most convincing story he could. He's a pretty sophisticated guy, but he's not a great writer. So he knew that the Department of Corrections had given his name over to his adversary. And when he's making his appeal form, he's saying, if I say that I know about this discovery document, that will impress the administrative authorities more than if I don't say about it. No, he had been – I'm trying to find – you tell me the story. He had been denied – he had asked at least four times for protection for, you know, in the 1990s. He'd immediately written to the DA's office when he found out that Mr. Burton had learned his name. And he did not at that point know that Mr. Burton had been given a document. But he did write to the DA's office, and he said, can you guys help me? This guy knows that I ratted him out, and now my life is in danger. At that point, the State had a duty to provide the document to him to say, okay, here, give this to the Department of Corrections, and they will help you get protection. He was denied protection at least four times over the next 10 years. He was denied – he was again denied protection, and the – in the Department of Corrections, Genevieve Rangel denied his request to not be transferred for lack of proof that his life was in danger. Only when he submitted the appeal form with the document was he granted protection in the Department of Corrections. Thank you. Right now, he is in protected custody. Is that correct? Or whatever you call it. Yes. Special housing. Yes. Okay. Are any of your other claims not barred by statute of limitations as the district court judge determined? Your Honor, I think all of the claims – the facts are sort of a moving target here, but the facts all hinge on the fact that he did not get this document when it was written. I'm just curious, does the statute of limitations bar all claims? In general? I'm just asking you. No, I'm not. I'm just asking you, if we were to disagree with your argument, does the statute of limitations bar all claims, or do we have to go to the merits of any other claim? Your Honor, it would bar all claims here. Okay. Thank you. Thank you. Thank you. Thank you. We're just splitting the time. Yeah, basically. Okay, that's fine. And if I go short, which I don't know if that will happen, I'm pleased to hand that time over to code defendants counsel. I want to emphasize two reasons why this Court should affirm the dismissal of the State correctional officer defendants. First, the statute of limitations bars many of Temple's claims. And second, all of Temple's claims are barred because these correctional officers defendants did not cause Temple any injury. Now, many of Temple's claims are barred by the statute of limitations because he was aware as early as 1992 that he had been exposed as an informant. And certainly he was aware by 1997, 1998, when Officers Rangel, Walker – excuse me, Case, Rosario, Walker, and Stewart denied his request for protective custody. Counsel, would you give me a citation to the record as to why you say that Temple was aware that he had been, as they say, ratted out in 1992? And then tell me where – same thing as to 1997 and 1998. Okay. Give me a second. I do have it, Your Honor. I have it on a different paper here. In 1992, inmates from CSB Sacramento told him that Barton was calling him an informant in his murder case. Could you give me the ER citation? This is the first amended complaint, paragraph 32, which – At the bottom of each page is a number. ER – Correct. Can you give me that number? If you can't, that's all right. Yes. I don't have it right offhand. I apologize. I don't have the ER in front of me right now. But as to the – when he sought protective custody, it's First Amendment complaint 38 through 43, paragraphs 38 through 43. And the First Amendment complaint is part of the excerpts of record, of course. So what is it in your position that he understood that he had a – that he reasonably knew that he had a claim or should have known that he had a claim? Oh. It's because that – Now, what – what – what year? What year did – He understood he had a claim as early as 19 – I didn't say understood. What year, based on the attachments? Okay. So this was a motion to dismiss. On a motion to dismiss, you can consider the allegations in the complaint. Right. And anything that's referred to in the complaint or attached to the complaint. Right. Okay. Now, if you just look at the complaint, the operative complaint, which I guess is an amended complaint that was filed, the operative complaint that the judge was working from, the district judge, what – if you look at all of that, what year is it your position that he should have known that he had a claim against the State correctional officer? He had a claim against the State correctional officers definitely by 1997 and 1998, because that – So he should have known in 1997 – Correct. – that he had a claim. A reasonably prudent person in his position would have known that in 1997 they had a claim against the correctional officers. Correct. Because it was at that time that he requested protective custody. And he did not file suit until six years later. And so his sanctions is barred. And that's because in his appeal document, when he was denied protective custody, he makes reference, as Judge Baer tried to point out. Well, it's not just that. It's the mere fact that he even requested protective custody. Because the reason why he requested protective custody is he knew that he was exposed as an informant, and he thought that his life was in danger. The statute of limitations begins when a plaintiff is aware of the harm. The Supreme Court has held, in the case of Wallace v. – Mr. Lee, you're getting into your five minutes for Mr. Briley. Okay. Well, very good.  Okay. So 1997. Correct. All right. Good morning, Your Honors. May it please the Court. My name is John Whitefleet. I represent Sutter County District Attorney Carl Adams, Assistant District Attorney Frederick Schroeder, the City of Yuba City, and Captain Webster.  for protective custody was denied. at the 12 v. 6 motion to dismiss. In essence, the document itself is essentially proof, evidence of his awareness of the disclosure. The answer to your question, Your Honor, is 1992. Oh, 1992. He was aware in 1992. He says in his allegations, in the complaint, the First Amendment complaint, I saw this television news broadcast where I was disclosed as the informant. Now, my experience is that these newscasts aren't the kind of things where somebody can look up and archive. The implication in the allegation is he saw it. He saw the newscast, and he was aware of it in 1992. I think the district court gave him the benefit of the doubt, looked at this CDC form 602 and said, even if he wasn't aware in 1992, he's got these allegations that he said he was aware of the document itself in 1986. And 1996. And the question is, well, he tends to claim that the document, he made a mistake. And in actuality, if you look at the original briefing in this case, not the replacement briefings, he says, well, I was speculating that it was the actual document. When, in fact, you look at the 602 form, it says discovery document. He actually labels it in a preceding paragraph. And so by implication is that he's referencing this simple one-line document that was disclosed, essentially, by the superior court in open court in 1992, which is essentially proof of the disclosure. That in itself is not an ultimately discrete injury that somehow restarts the statute of limitations. And so because of that, it's not essentially, it doesn't affect his claim against the municipal defendants or the prosecutorial defendants. Who do you understand his claim to be? I believe it's improper disclosure of his name as an informant, ultimately. Well, that can't be. Is that a constitutional violation? I don't believe so. I thought his claim was that there was an Eighth Amendment violation, certainly against the guards, the prison defendants. And to the extent that the court never reached, the district court never reached that aspect of it. And the claim against the DAs, I mean, the folks you represent, has to be something else. It has to be, Your Honor. Ultimately, because the decision was based on statute of limitations, I don't believe that was ever reached. Well, do you understand the way he alleges, what he's alleging, that disclosure violated, what, his? It's either the Eighth or the Fourteenth Amendment, Your Honor. Well, it caused him great mental strain to know that he was in a prison with a man who was out to kill him. Injury? And my understanding, yes, Your Honor, is that in 1992, he alleged that once he found that out, he wrote the judge in 1992. But the claim is that under 1983, that his constitutional right to be free from the infliction of mental injury was violated by the DA giving Barton Temple's name. And when he learned that, it caused him all sorts of grief, right? And if that is an attempt to address a substantive due process claim, I'm not sure, and of course, that wasn't briefed, I'm not sure that that actually states a claim, because ultimately, like I said, the district court. It's grounded in the Constitution. The harm has to be grounded in the Constitution. Agreed, Your Honor, yes. And even if the statute of limitations didn't bar these actions, and, you know, in the briefs, the replacement briefs, plaintiff constantly refers to the disclosure as by the state, by the state, by the state. And ultimately, of course, that means that the Eleventh Amendment should apply to the prosecutorial defendants and or that the prosecutorial immunity should apply as well. I think the key is that the interesting thing is that the Taylor case, which versus Kavanaugh, out of the Second Circuit, explicitly said that the plea negotiations, plea agreements, were part of the prosecutorial process. And I see that my time is up. On behalf of the municipal and prosecutorial defendants, I ask that. One question before you go. Are you still turning over, or is your office still turning over the names of informants to the convicted defendants? I'm not aware of that practice, Your Honor. Okay. Ms. Buttle. Thank you. The fundamental distinction between being aware that his name was disclosed as an informant and receiving the document that provided proof that his life was in danger is the crux of the issue here. The claim did not accrue until Mr. Temple understood that he had a cause of action for failure to protect. And that cause of action is grounded in the State's creation of the discovery document and its failure to give him that document when he asked for protection. He contacted them in 1992, asked them to help him, and they did not even acknowledge. In fact, they affirmatively misrepresented that there was no way. So what's his claim against the guards is based on what? It's an Eighth Amendment violation? Yes. It's also a failure to protect, a failure to investigate. But that's based on, you have to have a constitutional basis for your claim. It's an Eighth Amendment violation of the rule. So the first time that they denied him protection is when his claim, and he knew that he had, that he, his name had been disclosed. That's the State's argument, that that's when his claim arose, like Mr. And his claim arose when his, Mr. Temple's argument is that receipt of the discovery document constitutes the approval of a different claim. And he, that claim for failure to protect and for violation of his Eighth Amendment rights to be free of rule. So it was a continuing violation? It was a new violation. And the document. So the document itself. It was a new violation. The document itself created a new cause of action? Yes. At that point? Yes. And that was the only proof the Department of Corrections would accept on the record before this Court. Okay. Okay. Thank you. Thank you very much. I think I understand your position.      Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.
judges: Duffy, Paez, Bea